292 S.E.2d 610

**STATE of West Virginia ex rel. S. M. COOK, M.D.P.S.**

v.

**Teressa HELMS.***

No. 15189.

Supreme Court of Appeals of West Virginia.

July 7, 1981.

Dissenting Opinion June 23, 1982.

McGraw, J., filed dissenting opinion in which Harshbarger, J., joined.

Andrew S. Nason, Charleston, Peter A. Hendricks, Madison, for appellant.

* In a statutory appeal such as this, the case name is styled exactly as it appears on the original juvenile petition.

Chauncey H. Browning, Jr., Atty. Gen., Richard S. Glaser, Jr., and Janet Frye Steele, Asst. Attys. Gen., Charleston, for appellee.

NEELY, Justice:

This is an appeal from a decision by the Circuit Court of Lincoln County transferring the seventeen-year-old appellant, Teressa Helms, from juvenile jurisdiction to the court's criminal jurisdiction pursuant to *W. Va. Code*, 49–5–10 [1978].

On 29 September 1980 Helms was charged by petition with murder under *W. Va. Code*, 61–2–1 [1923]. As a result of a detention hearing on the same day she was detained at the Southern Regional Detention Center. At that time the court also ordered psychological and psychiatric evaluations. On 6 October 1980 the juvenile referee held a probable cause hearing at which the State introduced evidence that Helms had cooperated with two adult males in the shotgun murder of Ernie P. Neal. At the close of the evidence, the juvenile referee found that there was probable cause to believe that Helms had committed the crime of murder alleged in the petition.

A motion to waive juvenile jurisdiction pursuant to *W. Va. Code*, 49–5–10(a) [1978] was filed on 20 October 1980. At the transfer hearing on 31 October 1980, the court heard testimony from three witnesses for the State and three witnesses for the appellant. The State's witnesses were a juvenile probation officer, a clinical psychologist, and the juvenile referee. The appellant presented the director of a youth service agency, the operator of the Southern Regional Detention Facility, and a therapist for Boone Human Services. The court also reviewed the psychiatric and psychological reports.

On 22 December 1980, the court entered an order granting the motion to transfer. The order incorporated an opinion letter dated 16 December 1980 in which the court stated, in part:

[T]he court finds that she has average intelligence, is competent to stand trial in this matter, and has heard no evidence to indicate to the court that if found guilty of the charge of murder in this case, that she should be given any special treatment simply because she was several months short of her eighteenth birthday.

The letter also stated that the court found probable cause to believe that she had committed the crime of murder.

The appellant seeks reversal on the basis of two primary assignments of error: first, the transfer hearing did not take place within the seven days prescribed by statute from the date of the State's motion to waive juvenile jurisdiction; and, second the court did not make a finding concerning appellant's suitability for rehabilitative treatment under the juvenile laws.

I

■ *W. Va. Code*, 49–5–10(a) [1978] provides that a transfer hearing "shall be held within seven days of a filing of a motion unless it is continued for a good cause." In this case there was good cause to continue the transfer hearing beyond the seven day limit since *W. Va. Code*, 49–5–10(a) [1978] also provides that, before a court may conduct a transfer hearing, there must be "reasonable notice to the child, the parents ... and the child's counsel." At the time of the motion to transfer, the appellant was locked up at a detention facility four hours away from Lincoln County; her parents lived in North Carolina; and her attorney lived outside of Lincoln County. Given these circumstances and the several days necessary to effect service of process by United States Mail, the court granted a continuance of the hearing to provide "reasonable notice" to all necessary parties.[1] Had a continuance not been granted, all parties could not adequately have prepared for the hearing. Hence we find no error in

---

1. At the time the State filed its motion to waive juvenile jurisdiction, these circumstances were mentioned to the court. Though the word "continuance" was not expressly used, the court's subsequent docketing of the transfer hearing for 31 October demonstrates that the court in effect granted a continuance.

postponing the transfer hearing beyond seven days.

## II

■ Turning now to the appellant's second assignment of error, we hold today that, when a court finds that there is probable cause to believe that a juvenile has committed one of the crimes specified in *W.Va.Code*, 49–5–10(d)(1),[2] the court may transfer the juvenile to the court's criminal jurisdiction without further inquiry. To the extent this holding is inconsistent with *State v. R. H.*, 166 W.Va. 280, 273 S.E.2d 578 (1980) and *State v. C. J. S.*, 164 W.Va. 473, 263 S.E.2d 899 (1980), those cases are overruled.

We reach this conclusion on the basis of a close examination of the provisions of the *W.Va.Code*, 49–5–10(d) as amended in 1978.[3] The standards for transfer are set out in this provision, which contains five categories of crimes coupled with conditions relating to age and past juvenile record. With respect to four of the categories, subsections (2) through (5), the statute provides that, before ordering a transfer, the court must do two things: first, consider the juvenile's "mental and physical condition, maturity, emotional attitude, home or family environment, school experience and similar personal factors" and second, find that there is probable cause to believe that the juvenile committed one of the crimes described in the four subsections.

However, with respect to subsection (1), dealing with the most serious crimes, transfer may be ordered solely on a finding of probable cause to believe that the child committed any one of those enumerated crimes. Subsection (1) contains a clause which is not found in any of the other four subsections. This clause provides that, when probable cause is found as to one of the crimes listed in subsection (1), "the existence of such probable cause shall be sufficient grounds for transfer without further inquiry. . . ." From this we conclude that the Legislature intended to relieve courts from making any inquiry into the juvenile's "personal factors" when the court believes that the seriousness of the crime alone warrants the child's being treated as an adult. *State v. C. J. S.*, 164 W.Va. 473, 270 S.E.2d 135 (1980) (Miller, J., concurring in part and dissenting in part).

The 1978 revision of *W.Va.Code*, 49–5–10(d) was intended to eliminate the impossible burden of proof previously required of the State in a transfer hearing. Under the earlier statute on this subject the State had to demonstrate that there were no reasonable prospects of rehabilitation and that the child was so beyond redemption that there was no choice but to treat the child as an adult felon. E.g., *State v. Bannister*, 162 W.Va. 447, 250 S.E.2d 53 (1978); *State ex rel. E. D. v. Aldredge*, 162 W.Va. 20, 245

---

2. The specified crimes are treason, murder, robbery involving the use or presenting of deadly weapons, kidnapping, first-degree arson, and first-degree sexual assault.

3. *W.Va.Code*, 49–5–10(d) provides:

The court may, upon consideration of the child's mental and physical condition, maturity, emotional attitude, home or family environment, school experience and similar personal factors, transfer a juvenile proceeding to criminal jurisdiction if there is a probable cause to believe that:

(1) The child has committed the crime of treason . . .; the crime of murder . . .; the crime of robbery involving the use or presenting of firearms or other deadly weapons . . .; the crime of kidnapping . . .; the crime of first degree arson . . .; sexual assault in the first degree . . .; and in such case, the existence of such probable cause shall be sufficient grounds for transfer without further inquiry; or

(2) A child has committed an offense of violence to the person which would be a felo-

ny if the child were an adult: Provided, that the child has been previously adjudged delinquent for the commission of an offense which would be a violent felony if the child were an adult; or

(3) A child has committed an offense which would be a felony if the child were an adult: Provided, that the child has been twice previously adjudged delinquent for the commission of an offense which would be a felony if the child were an adult; or

(4) A child, sixteen years of age or over, has committed an offense of violence to the person which would be a felony if committed by an adult; or

(5) A child, sixteen years of age or over, has committed an offense which would be a felony if committed by an adult: Provided, that such child has been previously adjudged delinquent for an offense which would be a felony if the child were an adult.

S.E.2d 849 (1978). However, while the trial courts are now insulated from a subjective review concerning whether there was "sufficient evidence" to support their conclusion to transfer, the statute does not preclude a trial court judge from considering evidence about the child's "personal factors," even in circumstances where the child is accused of the enumerated serious crimes.

The trial court may still determine to treat a child under the juvenile laws, even where serious crimes are committed, if the court believes such treatment is warranted. In the present case the court did more than required by *Code*, 49–5–10(d). He conducted a thorough inquiry into the appellant's personal background and heard from five witnesses concerning the appellant's mental and physical status, which we conclude is an entirely commendable approach to a very difficult problem.

Accordingly, for the reasons set forth above, the judgment of the Circuit Court of Lincoln County transferring the appellant to the jurisdiction of the criminal court is affirmed.

Affirmed.

McGRAW, Justice, dissenting:

I dissent to syllabus point 2 of the majority opinion which, in effect, overrules not only *State v. R. H., supra*, and *State v. C. J. S., supra*, but an entire line of decisions which heretofore guaranteed fundamental constitutional protections for juveniles. The majority is apparently of the belief that the West Virginia and United States Constitutions do not apply to persons who are unfortunate enough to be less than eighteen years of age and accused of one of the crimes enumerated in W.Va.Code § 49–5–10(d)(1) [1978]. It occurs to me that all juveniles, regardless of the crime of which they are accused, are entitled to due process, and I therefore cannot agree with the majority's position.

In *Kent v. United States*, 383 U.S. 451, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), the United States Supreme Court held that due process requires that a juvenile be afforded a meaningful transfer hearing before the court can waive juvenile jurisdiction. We adopted and applied the holding of *Kent* in *State v. McCardle*, 156 W.Va. 409, 194 S.E.2d 174 (1973), where we stated:

> Certainly, juveniles should not be immune from appropriate disciplinary action when they violate the law, but juvenile proceedings, ostensibly under the philosophy of *parens patriae*, do not permit procedural arbitrariness. Under the guise of parental protection the state has, on occasion, denied the juvenile the constitutional guarantees afforded to an adult. This has taken the form of the denial of counsel and, as in this case, the denial of proper notice and a meaningful hearing, none of which should be permitted. It was held in *Kent, supra*, and we agree, that the waiver of juvenile jurisdiction is subject to review by an appellant court and if that court finds that the waiver was inappropriate the conviction must be vacated.

156 W.Va. at 414–415, 914 S.E.2d at 178.

We next addressed the requirements of due process in the context of a juvenile transfer proceeding in *State ex rel. Smith v. Scott*, 160 W.Va. 730, 238 S.E.2d 223 (1977). In *Smith* we recognized that the transfer hearing is a critical stage in the proceeding against a juvenile, and held that "before a court can waive its juvenile jurisdiction it must under due process: (1) afford adequate notice to the juvenile of the hearing; (2) appoint counsel in case of indigency; (3) conduct a meaningful hearing; and (4) issue a statement of the reasons for relinquishing juvenile jurisdiction." 160 W.Va. at 732–733, 238 S.E.2d at 225.

Furthermore, in *Smith* we also took note of the factors to be considered by a judge in reaching a determination on the issue of whether the court should relinquish its juvenile jurisdiction in favor of adult criminal jurisdiction,[1] and expressed the view that

---

1. These factors, which were appended to *Kent* by the United States Supreme Court, are:

1. The seriousness of the alleged offense to the community and whether the protection of the community requires waiver.

while the Legislature may statutorily require juvenile courts to consider certain factors in deciding to grant a motion for transfer, such statutory requirements do not preclude consideration of other criteria.

In *State v. R. H.*, 166 W.Va. 280, 273 S.E.2d 578 (1980), we addressed the constitutionality of W.Va.Code § 49–5–10 [1978], and held that the statute does not violate the due process provisions of the state and federal constitutions because the juvenile court must under the terms of the statute vindicate the standards set forth by the United States Supreme Court in *Kent* and adopted by this Court in *Smith*. This holding was based upon the language of W.Va. Code § 49–5–10(d) which permits transfer of the proceedings to the criminal jurisdiction of the circuit court only after the juvenile court has considered "the child's mental and physical condition, maturity, emotional attitude, home or family environment, school experience and similar personal factors . . . ."

More recently, in *In Re E. H.*, 166 W.Va. 615, 276 S.E.2d 557 (1981), we indicated that "it is quite possible that juvenile status is in the nature of a statutory entitlement much the same as civil service standing was considered to be a property interest in *Waite v. Civil Service Commission*, 161 W.Va. 154, 241 S.E.2d 164 (1977), and therefore, would require certain procedural due process protection before the right could be forfeited." 166 W.Va. at 622, 276

S.E.2d at 563 (footnote omitted). Moreover, we indicated that under *State v. McCardle, supra,* and W.Va.Code § 49–5–10, substantial due process rights must be accorded a juvenile at a transfer hearing, including:

> (1) an advance written notice of the grounds relied upon for transfer; (2) an opportunity to be heard in person and to present witnesses and evidence; (3) the right to confront and cross-examine adverse witnesses; (4) a neutral hearing officer; (5) the right to have counsel present including court-appointed counsel if indigent; (6) a record of the evidence of the hearing; (7) findings of fact and conclusions of law upon which the transfer decision is based; and (8) a right of direct appeal to this Court.

166 W.Va. at 623–624, 276 S.E.2d at 563.

These cases, as well as many others [2], demonstrate the traditional concern this Court has shown toward the due process interests of a juvenile confronted with a criminal accusation. With little discussion, and no explanation of the constitutional basis for its decision, the majority has now abandoned these concerns for fundamental fairness. I am convinced the interpretation given W.Va.Code § 49–5–10 by the majority renders the statute unconstitutional under the standards of *Kent v. United States, supra,* and *State ex rel. Smith v. Scott, supra.* Under the majority's holding, a meaningful transfer hearing is no longer required once probable cause is

---

2. Whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner.

3. Whether the alleged offense was against persons or against property, greater weight being given to offenses against persons especially if personal injury resulted.

4. The prosecutive merit of the complaint, i.e., whether there is evidence upon which a Grand Jury may be expected to return an indictment (*to be determined by consultation with the* United States Attorney).

5. The desirability of trial and disposition of the entire offense in one court when the juvenile's associates in the alleged offense are adults who will be charged with a crime in the U. S. District Court for the District of Columbia.

6. The sophistication and maturity of the Juvenile as determined by consideration of his home, environmental situation, emotional attitude and pattern of living.

7. The record and previous history of the juvenile, including previous contacts with the Youth Aid Division, other law enforcement agencies, juvenile courts and other jurisdictions, prior periods of probation to this Court, or prior commitments to juvenile institutions.

8. The prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the juvenile (if he is found to have committed the alleged offense) by the use of procedures, services and facilities currently available to the Juvenile Court.

2. *See, e.g., State ex rel. D. D. H. v. Dostert*, 165 W.Va. 448, 269 S.E.2d 401 (1980); *State v. C. J. S.*, 164 W.Va. 473, 263 S.E.2d 899 (1980); *State v. D. W. C.*, 163 W.Va. 494, 256 S.E.2d 894 (1979); *State v. M. M.*, 163 W.Va. 235, 256 S.E.2d 549 (1979); *State ex rel. E. D. v. Aldredge*, 162 W.Va. 20, 245 S.E.2d 849 (1978); *State ex rel. Harris v. Calendine*, 160 W.Va. 172, 233 S.E.2d 318 (1977).

found to believe the juvenile has committed one of the enumerated crimes. Apparently, the circuit court need not even make its own inquiry into probable cause, but may simply rely on the juvenile referee's finding, and automatically transfer the juvenile to its criminal jurisdiction. Thus under the majority opinion, a juvenile who is charged with one of the offenses enumerated in W.Va.Code § 49–5–10 has no due process rights at the transfer hearing regardless of the holdings in *Kent* and *Smith*.

I do not believe the Legislature intended by the enactment of the 1978 amendment to W.Va.Code § 49–5–10 to deprive juveniles of the fundamental guaranty of due process contained in the United States and West Virginia Constitutions. Indeed, the Legislature is powerless to do so by statutory enactment. I therefore dissent from syllabus point 2 of the majority opinion.

I am authorized to state that Justice HARSHBARGER joins me in this dissenting opinion.